UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EVANSTON INSURANCE
COMPANY,

Plaintiff,

v.

CLARTRE, INC. and SCOTT CLARKE,

Defendants.

CASE NO. 2:14-cv-00085-BJR

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT
AS TO DEFENDANTS'
COUNTERCLAIMS**

Before the Court is Plaintiff Evanston Insurance Company's [62] Motion for Summary Judgment on Defendants' Counterclaims. The motion is fully briefed and ripe for resolution. For the reasons set forth below, the Court grants Plaintiff's motion.

## I.    BACKGROUND

Plaintiff Evanston Insurance Company ("Evanston") is the insurer for Defendants Clartre, Inc. ("Clartre") and Scott Clarke ("Clarke") (collectively, "Defendants"). Defendants were sued in Whatcom County Superior Court ("the underlying litigation") for misappropriation of trade secrets and confidential information and other related claims. *See* Decl. of David R.

Greenberg, Docket No. 71, Ex. A (Amended Compl.) ¶¶ 75-154. Evanston provided legal defense to Defendants in the underlying litigation under a reservation of rights. Evanston filed the instant suit on January 21, 2014, seeking a declaration of no coverage, i.e., that it has no duty to defend Defendants in the underlying actions. On October 7, 2015, Defendants filed counterclaims alleging violation of Washington's Insurance Fair Conduct Act ("IFCA"), RCW §§ 48.30, *et seq.*, violation of Washington's Consumer Protection Act ("CPA"), RCW §§ 19.86, *et seq.*, bad faith, and negligence due to Evanston's alleged failure to fully pay Defendants' attorney's fees related to the underlying litigation. In the instant motion Evanston seeks summary judgment as to these counterclaims.[1]

Upon agreement by Evanston to defend Defendants under a reservation of rights, Defendants refused Evanston's appointment of counsel and instead requested that their present attorneys continue representation, with their services to be reimbursed by Evanston. Decl. of Peter Mintzer, Docket No. 63, Ex. A (Letter from Defendants). Evanston agreed to permit Defendants to retain their attorneys, subject to Defendants' attorneys complying with Evanston's "Litigation Management Guidelines – Defense." Decl. of Peter Mintzer, Docket No. 63, Ex. B (Letter from Plaintiff).

At issue in Defendants' counterclaims is the question whether Evanston's refusal to pay a portion of Defendants' attorney's fees was reasonable. Defendants' attorneys have billed total costs of $1,472,487.13. Decl. of James D. Nelson, Docket No. 69 at ¶ 7. According to Defendants, Evanston has refused to pay some amount "less than $50,000." *Id.* Defendants contend that this nonpayment, combined with the fact that Defendants were forced to file appeals to Evanston

---

[1] On January 21, 2016, the Court issued an Order [75] granting Evanston's [30] Motion for Summary Judgment and issuing a declaration of no coverage and no duty to defend as to Defendants.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT AS TO DEFENDANTS'
COUNTERCLAIMS- 2

regarding $318,343.66 of the deductions, is sufficient evidence that Evanston has acted unreasonably and in bad faith. *Id.* Defendants' claim of negligence is included in their claim of bad faith, as they contend that Evanston has breached its duty "to exercise reasonable care to avoid unreasonably controlling or limiting the defense of its insureds and/or unreasonably denying coverage and/or payment of benefits." Counterclaims, Docket No. 52 at ¶ 7.2. Similarly, Defendants' counterclaims based on violation of IFCA and the CPA are premised upon the same nonpayment of attorney's fees by Evanston. Specifically, Defendants argue that Evanston has violated IFCA and the CPA by "making unreasonable, arbitrary, and unjustifiable deductions to the invoices of defense counsel." Counterclaims, Docket No. 52 at ¶ 6.4.

## II.       STANDARD

Washington law regulates an insurer's duty to defend in the context of a reservation of rights; the duty to defend is controlled by the so-called *Tank* doctrine: "An insurer defending its insured under a reservation of rights has 'an enhanced obligation of fairness toward its insured' because of the '[p]otential conflicts between the interests of insurer and insured, inherent in a reservation of rights defense.' Fulfilling this enhanced obligation requires the insurer to . . . 'refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.'" *Mutual of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 169 P.3d 1, 7-8 (Wash. 2007) (quoting *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133 (Wash. 1986)) (internal citations omitted).

## III.       ANALYSIS

### A. Bad Faith and Negligence

"An action for bad faith handling of an insurance claim sounds in tort." *Mutual of Enumclaw Ins. Co.*, 169 P.3d at 8 (quoting *Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 503

(Wash. 1992).  As such, to demonstrate bad faith, the insured must demonstrate a duty on the part of the insurer, breach of that duty, and damages proximately caused by the breach.  *Mutual of Enumclaw Ins. Co.*, 169 P.3d at 8.  In addition, "[i]n order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded."  *Id.* (quoting *Kirk v. Mount Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998).  "Bad faith will not be found where a denial of coverage or a failure to provide a defense is based upon a reasonable interpretation of the insurance policy" (in this case, Evanston's Litigation Guidelines).  *Kirk*, 951 P.2d at 1126.

Here, Defendants' counterclaims are premised on a dispute concerning billing for attorney's fees.  There is no question that Evanston has reimbursed Defendants for approximately $1,422,000 in attorney's fees.  Evanston's stated reason for declining to reimburse Defendants for the remaining disputed amount, which amounts to less than $50,000, is that Defendants did not comply with Evanston's Litigation Management Guidelines.  Decl. of Justin S. Landreth, Docket No. 38 at p. 9 of 37.  Defendants have raised no question as to whether the Management Guidelines are reasonable.  Indeed, Defendants appear to acknowledge this point in a letter sent to Evanston, stating that "[t]he defense team recognizes the need to adhere to any certain litigation guidelines . . . ."  Decl. of Justin S. Landreth, Docket No. 38 at p. 26 of 37.  Defendants' opposition to the instant motion is devoid of any discussion of the Guidelines, and Defendants cannot (and do not) now contend that the Guidelines were unreasonable.  Accordingly, the Court finds that Evanston's Litigation Management Guidelines are reasonable.

**B.  Reasonableness of Paid and Withheld Attorney's Fees**

Given the reasonableness of Evanston's Litigation Management Guidelines, the question becomes whether Evanston's failure to reimburse specific costs was reasonable.  The question of award of attorney's fees, as well as what amount of attorney's fees qualify as "reasonable," is a

1   question for the court. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Chalmers v. City*

2   *of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (holding that the district court determines a

3   reasonable rate of attorney compensation).

4           Evanston, in several letters attached to the Declaration of Justin S. Landreth, Docket No.

5   38, provides a detailed breakdown of the various deductions made by Evanston with respect to

6   Defendants' requests for reimbursement of attorney's fees. Evanston also includes Defendants'

7   responses to said deductions. *Id*. In many cases Evanston provided additional payment on appeal

8   when Defendants provided more information regarding a disputed reimbursement. *Id*. The Court

9   has reviewed Evanston's explanations concerning deductions and denials of payment. These

10  deductions and denials appear to be based upon reasonable application of Evanston's Litigation

11  Management Guidelines. The following examples are illustrative:

12          Evanston declined to pay the full reimbursement requested by Defendants where a single

13  attorney was billing in excess of ten hours a day, a practice prohibited by Evanston's Litigation

14  Management Guidelines. Decl. of Justin S. Landreth, Docket No. 38 at p. 13 of 37. As noted by

15  Evanston, Defendants did not indicate that this pace of work was necessary because of an

16  emergency, and the work was not taking place during trial, in which case it would have been

17  permitted. Rather, it involved simple document review. *Id*. Evanston's refusal to pay attorney's

18  fees in excess of ten hours a day from a single attorney was a reasonable application of Evanston's

19  Guidelines.

20          Similarly, Evanston declined to reimburse Defendants for approximately $400 for

21  "strategy discussion," noting that its Litigation Management Guidelines specifically prohibited

22  reimbursement for "intra-office conferences." Based on the description of the charge submitted

23  by Defendants for reimbursement, Evanston's refusal to pay attorney's fees for a "strategy

24

1  discussion" was a reasonable application of its Guidelines.  Decl. of Justin S. Landreth, Docket

2  No. 38 at pp. 16-17 of 37.

3         Evanston further declined to pay approximately $16,000 in attorney's fees due to

4  excessive time spent on various tasks.  One such task involved Defendants' having an associate

5  review documents to determine whether a chemical formula was identified in the documents; this

6  document review was only the first step in the review process, as a partner or patent attorney would

7  then further review the identified documents.  Decl. of Justin S. Landreth, Docket No. 38 at pp.

8  11-12.  Evanston determined that excessive time was spent on the task when the associate's pace

9  was only 35 pages an hour.  *Id.*  Based on the limited nature of the task, the Court finds that

10 Evanston's deduction for excessive time was reasonable.

11        Finally, Evanston also declined to pay for training for Defendants' staff and for database

12 management, finding that these costs were "administrative and overhead cost of doing business,"

13 and thus were not part of the cost of a "reasonable defense."  Evanston's refusal to pay costs not

14 directly related to the provision of defense to Defendants was also a reasonable application of

15 Evanston's Litigation Management Guidelines.  Decl. of Justin S. Landreth, Docket No. 38 at pp.

16 14-15 of 37.

17        The Court notes that in many cases, including its evaluation of excessive time spent on

18 tasks, duplication of efforts by partners and associates, and determining whether research on a

19 specific topic in excess of five hour was reasonable, Evanston authorized full reimbursement when

20 presented with additional information by Defendants. Decl. of Justin S. Landreth, Docket No. 38.

21 Evanston's willingness to provide additional reimbursement is further evidence of its reasonable

22 application of the Guidelines, and demonstrates that Evanston was not "engaging in any action

23

24

1   which would demonstrate a greater concern for the insurer's monetary interest than for the insured's

2   financial risk." *Mutual of Enumclaw Ins. Co.* 169 P.3d at 8.

3         As noted above, a court will not find bad faith where the insurer acts "based upon a

4   reasonable interpretation of the insurance policy." *Kirk*, 951 P.2d at 1126. Here, Evanston acted

5   reasonably in refusing to reimburse a small portion of Defendants' attorney's fees (some amount

6   less than $50,000 out of $1,472,487.13) based upon Defendants' failure to comply with Evanston's

7   Litigation Management Guidelines. Defendants may now disagree with those Guidelines, but they

8   agreed to abide by them when choosing to be defended by attorneys of their own choice.

9   Defendants have failed to demonstrate that Evanston's denial of the contested fees was

10   "unreasonable, frivolous, or unfounded," or involved an unreasonable application of Evanston's

11   guidelines. *Mutual of Enumclaw Ins. Co.*, 169 P.3d at 8. Accordingly, the Court will grant

12   summary judgment to Evanston as to Defendants' counterclaims of bad faith and negligence.

13        **C. IFCA & Consumer Protection Act**

14         Defendants' IFCA and CPA counterclaims against Evanston are premised upon the same

15   nonpayment of attorney's fees discussed above. Because the Court finds that Defendants have

16   failed to establish that Evanston's denial of payment of attorneys' fees was unreasonable,

17   Defendants' IFCA and CPA claims also fail. Accordingly, the Court will grant summary judgment

18   to Evanston as to Defendants' IFCA and CPA counterclaims.

19

20

21

22

23

24

1

## IV.   CONCLUSION

2          For the reasons stated above, the Court finds that Defendants have failed to establish that

3 Evanston acted unreasonably in denying payment of a portion of Defendants' attorney's fees.

4 Accordingly,  **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is

5 **GRANTED**.

6
Dated: March 22, 2016

7

8                                     *Barbara J. Rothstein*

9

10                        _____

11                        BARBARA J. ROTHSTEIN
                         UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24